IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Walter Quick, | ) | Civil Action No. 5:11-2059-GRA-KDW |
| Petitioner, | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| Warden Ms. D. Drew, | ) | |
| Respondent. | ) | |

Petitioner, Walter Quick ("Petitioner" or "Quick"), a federal prisoner, filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Respondent filed a motion to dismiss, or in the alternative for summary judgment. ECF No. 12. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion. ECF No. 13. Petitioner filed a response in opposition to Respondent's motion, Respondent filed a Reply, and Petitioner filed a Sur-Reply. ECF Nos. 25, 26, 27. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) D.S.C. for a Report and Recommendation. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's motion be granted.

I.    Factual Background

Petitioner is currently incarcerated at the Federal Correctional Institution in Bennettsville, South Carolina ("FCI-Bennettsville"). On June 13, 2010, at approximately 12:10 p.m., staff was securing inmates into their cells in C-A Unit at FCI Bennettsville when they heard a loud crashing noise coming from the lower shower area. ECF 1-1 at 4. Upon investigation, staff discovered 14 one-gallon jugs of liquid on the floor, having apparently fallen from the ceiling where they were hidden. *Id.* Later sample testing revealed the containers contained homemade

intoxicants. ECF No. 25-3. Staff retrieved the video surveillance footage of the area for the time leading up to this crash in order to identify the inmates responsible. ECF Nos. 12-3 ¶ 3 and 12-4, ¶ 4. Officer Heather Crifasi and Counselor Alvin H. Fanucci identified Petitioner as being involved. *Id.* They observed him moving from his cell to the shower stall in question, removing the light fixture in the shower stall and placing several jugs in the ceiling approximately one hour before the ceiling collapsed. *Id.* Petitioner was identified from photographs and cell assignment information. ECF 12-4 ¶ 4.

Counselor Fanucci prepared an incident report charging Petitioner with possession of intoxicants. *Id.* ¶ 5. The initial incident report was prepared on June 15, 2010, at 1:10 p.m. and delivered to Petitioner at 3:00 p.m. the same day. ECF No. 12-5 at 1. Lieutenant Hudson investigated the incident report the evening it was delivered. *Id.* at 2. Petitioner was advised of his rights, whereupon he made a statement denying involvement. *Id.* Petitioner did not request any witnesses. *Id.* Petitioner was placed in the Special Housing Unit ("SHU") and the incident report was forwarded to the Unit Discipline Committee ("UDC") for further processing. *Id.* ¶ 27.

On June 18, 2010, Counselor Fanucci revised the incident report to provide information regarding testing of the contents of the jugs. ECF 12-4 ¶ 5. This revised incident report was delivered to Petitioner on June 18, 2010 and investigated by Lt. Cartwright. ECF No. 12-6. Petitioner was advised of his rights and elected to make a statement denying involvement. *Id.* Petitioner stated staff should "review the camera" because he was "not on the camera doing none of this at all." *Id.* The matter was referred to the UDC for further processing. *Id.*

The UDC conducted a hearing on June 21, 2010. ECF No. 12-6 at 1, Part II. Petitioner stated that he was not on the camera and was not involved in the incident. *Id.* After review of the evidence, the UDC decided to refer the charges to the Disciplinary Hearing Officer ("DHO") for

further hearing. *Id.* Petitioner was advised of his rights before the hearing, including the right to have assistance from a staff representative and the right to call witnesses. ECF No. 1-1 at 6. Petitioner was provided notice of the hearing for the violation "possessing intoxicants." *Id.* at 7. Petitioner declined the services of a staff representative and indicated that he wanted to call his cellmate as a witness. *Id.* Petitioner later elected to proceed with a written statement from the witness instead of having him appear at the hearing. *Id.* At some point during this process, Petitioner asked his counselor to arrange for him to speak with Officer Crifasi about this matter. ECF No. 12-3 ¶ 5. When Petitioner and Officer Crifasi met, Petitioner asked whether he could review the video footage. *Id.* Officer Crifasi informed Petitioner that she was not the approving official to allow access to the video system, but that he could get a staff representative in the disciplinary process who could review the video for him. *Id.* Petitioner asked which specific camera numbers were reviewed. *Id.* Officer Crifasi declined to give Petitioner that information because of security concerns. *Id.*

The disciplinary hearing was held on June 23, 2010. ECF No. 1-1 § I.B. Petitioner was present and again advised of his rights. *Id.* § V. When asked about the charge, Petitioner stated, "I was not involved. I wasn't on camera at all. I'm not the one on camera." *Id.* § III.B. Petitioner did not request assistance from a staff representative. *Id.* § II.A. Petitioner asked his cellmate, Inmate Kirk, to appear as a witness at the hearing but elected to waive his presence and proceeded with a written statement from the witness instead. *Id.* § III.B.2.

After consideration of all the evidence, the DHO found that Petitioner committed the prohibited act as charged. *Id.* § IV. The DHO sanctioned Petitioner with disallowance of 27 days good conduct time, forfeiture of 27 days non-vested good conduct time, 30 days disciplinary segregation, loss of commissary privileges for 180 days, and loss of telephone privileges for 180

days. *Id.* § VI. The DHO prepared a written report detailing this decision, the evidence relied upon, and the reasons for the sanctions imposed. *Id.* §§ V and VII.

A copy of this written decision was delivered to Petitioner on July 7, 2010, and he appealed this decision throughout the administrative remedy process. The disciplinary action and sanctions were upheld. ECF No. 1-1 at 8-14; ECF No. 12-2.

With the filing of this petition for writ of habeas corpus Petitioner seeks to overturn his administrative disciplinary action, have the disciplinary action expunged from his records, and his 54 days of good-conduct time restored. Petitioner claims his constitutional rights were denied because prison staff suppressed exculpatory witness statements and prevented him the opportunity to present exculpatory evidence in his defense, specifically footage from the video surveillance system. ECF No. 1.

II. Standard of Review

A. Motion to Dismiss

Pursuant to Rule 12(b)(6) a motion to dismiss may be granted when, construing allegations in light most favorable to plaintiff and assuming facts alleged in the complaint to be true, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). In deciding a Rule 12(b)(6) motion, the court can rely only upon the allegations in the complaint and those documents attached as exhibits or incorporated by reference. *Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the court must construe factual allegations in the

nonmoving party's favor and treat them as true, the court need not treat the complaint's legal conclusions as true. *Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996) (noting that in 12(b)(6) analysis, court need not accept plaintiff's "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations") (internal quotations and citations omitted); *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 217-18 (4th Cir. 1994).

B. Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."

*Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    C.    Habeas Corpus

        1.    Section 2241 Generally and Exhaustion Requirement

Generally, a habeas petitioner must present his claims to an appropriate forum before filing his petition in this court. This requirement of exhaustion is largely unavoidable. *Ex parte Hawk*, 321 U.S. 114, 117 (1944). "Unlike petitions brought under [28 U.S.C.] § 2254, which challenge the validity of a state court conviction and sentence, petitions brought under § 2241 generally challenge the execution or implementation of a sentence, such as parole matters, sentence computation, calculation of good time credits, prison disciplinary actions, and transfers." *Clemmons v. South Carolina*, C/A No. 0:08-607-RBH, 2008 WL 2845636, *1 (D.S.C. July 18, 2008).

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, courts consistently require prisoners to exhaust their administrative remedies prior to seeking habeas review under § 2241. *See Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 490-91 (1973) (requiring exhaustion in 28 U.S.C. § 2241 matter); *Timms v. Johns*, 627 F.3d 525 (4th Cir. 2010) (noting courts require "exhaustion of alternative remedies before a prisoner can seek federal

habeas relief.") (internal quotation marks omitted). Exhaustion allows prison officials to develop a factual record and "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007). Respondent does not dispute that Petitioner exhausted his available administrative remedies. ECF No. 12 at 3.

   III.   Discussion

When a prisoner faces the possible loss of good-conduct credits in prison disciplinary proceedings, he is entitled to certain due process protections. *See Wolff v. McDonnell,* 418 U.S. 539, 564 (1974). These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. *Wolff,* 418 U.S. at 564-71. Furthermore, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 455 (1985).

Here, Petitioner, who was sanctioned with the loss of good-time credit, was given advance written notice of the charges more than 24 hours before his June 23, 2010 DHO hearing. ECF No. 1-1 at 7. Petitioner was offered the opportunity to present evidence in the form of documents or witnesses, and to have the assistance of a staff representative. *Id.* at 6. Although Petitioner declined to use a staff representative, he did choose to call a fellow inmate as a witness. *Id.* at 7. He later decided to proceed with the witness's statement instead of his appearance at the hearing. *Id.* at 1. The hearing record reflects that Petitioner appeared at the

7

hearing and gave a statement. *Id.* Petitioner received all the process due as required by *Wolff* in his disciplinary hearing.

In opposing Respondent's motion, Petitioner argues that his due process rights were violated because there were no eye-witnesses to the incident and because the DHO did not personally review the potentially exculpatory videotape evidence. ECF No. 25-1 at 1. The court disagrees. The DHO did not need to personally review the videotape. In a prison disciplinary proceeding, a prisoner is not entitled to the "full panoply of rights" that are present in a criminal prosecution. *Wolff*, 418 U.S. at 556. "Given that a DHO can rely on the statements of adverse witnesses without Petitioner's cross-examination or confrontation, it follows that a DHO officer can similarly rely on the statements of a staff member regarding his review of potentially exculpatory videotape evidence." *Alexander v. Schleder*, 790 F. Supp. 2d 1179, 1187 (E.D. Cal. 2011).

In ruling after Petitioner's hearing, the DHO stated that, in addition to other evidence, he relied on reporting staff members' "review of video footage positively identifying [Petitioner] as one of the inmates involved in placing intoxicants in the ceiling of the handicap shower." ECF No. 1-1 at 2. The court finds it was reasonable for the DHO to rely on the statements of Officer Crifasi and Counselor Fanucci, who had reviewed the video surveillance footage. The DHO was not required to have reviewed the footage himself.

Petitioner also argues that the evidence was insufficient to support his conviction and that he is innocent of the charge. However, despite Petitioner's claims of innocence and his belief that the DHO reached the wrong conclusion, there was sufficient evidence to support his

disciplinary conviction. The "some evidence" standard the court employs in considering this matter is a lenient one. The DHO's decision is to be upheld when supported by no more than "a modicum of evidence," and the standard is met if there is any evidence in the record that could support the decision. *Superintendent, Mass. Corr. Inst.*, 472 U.S. at 455-56. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. *Id.*

Having reviewed the record and the parties' arguments, the undersigned finds that "some evidence" exists to support the DHO's decision. The DHO relied upon the staff member's written report of the incident and staff members' review of the video footage.[1] ECF No. 1-1 at 2. The DHO explained that in addition to the incident report and investigation, he considered the following documentary evidence: a photograph of the homemade intoxicants, a supporting memorandum from a senior officer specialist revealing the test results of the intoxicants, and a supporting memorandum from Officer Crifasi identifying Petitioner as a participant. *Id.* at 1. The DHO also considered Petitioner's statement denying involvement, as well as statements from other inmates who claimed Petitioner was not involved. *Id.* at 2. However, the DHO relied on the greater weight of evidence that included reporting staff members' written statements, test

---

[1] In responding to Petitioner's appeal of the DHO's decision, the Regional Director referenced eyewitness accounts of the incident. ECF No. 25-3 at 1. While the undersigned notes that there was no eyewitness to the actual incident (ceiling collapse), the DHO's decision clearly indicates he relied on the witnesses' review of the video surveillance tape that showed that Petitioner placed jugs in the ceiling. ECF No. 1-1 at 2. As discussed above, there was no need for the DHO to review the videotape.

results of the substance, and Petitioner's previous statement that another inmate was not present.[2] *Id.* It is not the court's prerogative to make an independent assessment of the credibility of the witnesses or weigh the evidence. There is some evidence to support the DHO's decision, and the requirements of due process were satisfied. Accordingly, the decision should be upheld.

IV.  Conclusion

Based on the foregoing reasons, the court recommends that Respondent's motion, ECF No. 12, be GRANTED and the habeas petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

June 25, 2012  
Florence, South Carolina

Kaymani D. West  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

---

[2] Petitioner asserts that his knowledge about the other inmate came from that inmate, not his own personal knowledge. ECF No. 25-1 at 5. Even if the court disregards that evidence, there remains sufficient evidence in the record to support the DHO's decision.